## Case No. 12,211.

In re SAFE DEPOSIT & SAVINGS INST.

[7 N. B. R. 392.] [1]

District Court, N. D. New York. Oct. 12, 1872.

BANKRUPTCY — DENIAL OF ALLEGATIONS OF PETITIONING CREDITORS — EVIDENCE — POWER OF CONGRESS TO PASS BANKRUPT LAW — CONFLICT WITH STATE LAWS — PRIOR PROCEEDINGS IN STATE COURT.

1. When all the allegations of the petitioning creditors' petition are denied by the answer and amended answer, with the exception of the allegation of insolvency, which is admitted by the respondent, as shown by its inability to meet the legal demands of its creditors (depositors) an order of adjudication of bankruptcy will not be made until the acts of bankruptcy alleged, or one of them, shall be sustained by evidence taken upon the issue made by the petition and amended answer.

[Cited in Re Findlay, Case No. 4,789; Re Hathorn, Id. 6,214.]

2. The plenary and paramount power of congress to establish uniform laws on the subject of bankruptcies throughout the United States, is given in express terms by the constitution of the United States. It is therefore very clear that when congress has exercised the power thus conferred, their action must necessarily control or limit the exercise of the power of the United States over the same subject

matter; and that whenever any state legislation, or any action of the state courts comes practically into actual conflict with the proper execution of the laws of congress, constitutionally passed under such grant of power, state legislation and the jurisdiction and action of the state courts must yield to the paramount authority of the national government. In re Bininger [Case No. 1,420]; also, In re Merchants' Ins. Co. [Id. 9,441]; In re Independent Ins. Co. [Cases Nos. 7,017 and 7,018].

[Cited in Re Dole, Case No. 3,965.]

3. Objection to the exercise of jurisdiction by bankruptcy court founded upon the prior proceedings in the state court against the corporation and its property, and the consequent taking of possession of all the alleged bankrupt's estate under such proceedings before the petition in this case was filed, and under which proceedings it is insisted that the state court has now the exclusive right to administer the estate of the alleged bankrupt, overruled.

HALL, District Judge. This is an application for an adjudication in bankruptcy against the above named corporation. The original petition was abandoned by the creditor who obtained and served the order to show cause against an adjudication; but other creditors appeared and prosecuted such petition, under section forty-two of the bankrupt act [of 1867 (14 Stat. 537)]. The respondent appeared and filed an answer; and the question of adjudication was very elaborately and ably argued upon the petition and answer.

The alleged act of bankruptcy, secondly charged in the original petition, is the only one relied upon by the learned counsel of the petitioners; it being conceded that the other act of bankruptcy charged is sufficiently denied. Whether the answer, by its express admissions and its failure to deny facts properly charged in the petition, sufficiently establishes the act of bankruptcy relied upon and entitles the petitioners to an adjudication, is the question now to be determined.

The petition charges, in substance, that the respondent, within six calendar months before the filing of the petition, and on or about the twelfth day of September eighteen hundred and seventy-two, being bankrupt and insolvent, or in contemplation of bankruptcy and insolvency, did procure and suffer its property to be taken on legal process, to wit, an order and proceedings in an action commenced and prosecuted in the supreme court of the state of New York, by and in the name of one Benjamin Allen, against the said corporation, while said Allen was one of its directors or trustees, acting in collusion with said corporation; that its said property was so taken on such legal process by Frank Hiscock and Timothy Parker, who were, in and by such order and proceedings in such action, appointed receivers of all the property and effects of the said corporation; that they as such receivers on and by virtue of such order and proceedings in said action had taken the said property into their possession; and that said corporation did consent to the same, and did thereby, by its officers, attorney and counsel, procure and suffer its said property to be so

[1] [Reprinted by permission.]

taken on such legal process by the said Frank Hiscock and Timothy Parker, as such receivers, at the city of Syracuse, and at the city of Utica, within this district, with the intent by such disposition of its said property to defeat or delay the operation of the bankrupt act.

A printed circular was pasted to the petition, and, by an express statement in the body of such petition, it was made a part thereof; but it was not alleged that such circular was issued or sanctioned by the respondent corporation. This circular purported to be signed by Levi Blakeslee, (who verified the amended answer in this case on the seventh inst., and stated in his affidavit of verification that he was then and since February, eighteen hundred and seventy-one, had been the cashier of said respondent corporation, at Utica, and as such had charge of its business and affairs there); by Patrick Lynch, (who also verified such amended answer on the same day and stated in his affidavit of verification that he had been the cashier and manager of the corporation respondent since April, eighteen hundred and seventy-one, at Syracuse, and as such had charge of the business of such corporation at Syracuse, and was still such cashier); by Benjamin Allen, and eleven others. The circular was dated September twelfth, eighteen hundred and seventy-two, and was addressed "to the depositors of the People's Safe Deposit and Savings Institution," and then proceeded as follows: "This institution has been unable to procure currency to meet all calls thus far by depositors, and receivers have been appointed by the court, of the property of the bank. Such an appointment was an absolute necessity, and, under the circumstances, we believe for the best interest of the depositors, and will avoid a sacrifice of securities." It then names the receivers; declares that the parties signing the circular have the fullest confidence in such receivers; that they have given complete security, &c., &c. There is, however, no allegation in the petition or admission in the answer that the persons whose names are affixed to the circular were the trustees or managers of the corporation, or that it was issued by the authority of the corporation or any of its officers or agents.

The amended answer of the respondent first "denies," (positively and not on information and belief) "that within six calendar months next preceding the date of the said petition, or ever, the said People's Safe Deposit and Savings Institution of the state of New York did commit an act or acts of bankruptcy within the meaning of the bankrupt act;" and since the forms of pleading sanctioned by the New York court of procedure have been prescribed by congress for use in the courts of the United States in this district, this general denial, standing alone, would probably put the petitioners to the proof of every fact charged which was necessary to constitute an act of bankruptcy. It is therefore necessary that the express admissions or other statements of the respondent's answer should be carefully considered, as they alone can be relied on to establish the acts of bankruptcy charged. It is true that upon the argument certain facts were assumed by both parties to be conceded or established, but no admission or concession was put in such form that it could be returned as the basis of judicial action if the decision of this court should be brought before the circuit court for review.

Looking, then, to the answer alone and giving its substance only, and only so much of it as is material to the question under discussion, it may be properly said that it also contains a further and more specific, but equally positive, denial of the particular act of bankruptcy relied upon in the argument. The third article of the answer fully denies that act of bankruptcy in direct and positive terms, in language very closely following the language of the allegations of the petition; and were it not for the subsequent admissions in the answer it might well be supposed that the existence of nearly all of the material facts alleged as together constituting such act of bankruptcy were severally and separately so denied. Nevertheless, the subsequent admissions in the answer, even when inconsistent with such denials, may be properly taken as conclusive against the respondent; and to such admissions our attention will be directed.

The corporate existence of the respondent, the exercise of its franchises in receiving deposits, making loans and investments upon bonds and other securities, in short the carrying on of business as a savings bank, with a very wide range in its transactions, is admitted; and it is then stated, in substance, that about the first day of September, eighteen hundred and seventy-two, and for some days thereafter false and malicious circulars were distributed to many of their depositors; that in consequence thereof a panic was created and a run on said savings bank was commenced and depositors in large numbers, continued from day to day to call for the amount of their deposits; that the corporation continued to pay their depositors at Utica until such payments had substantially exhausted the current funds on hand in that city, and, as the corporation could not raise current funds sufficient to pay off the depositors as they called for payment, without sacrificing the assets and securities owned by the corporation, it refused, at Utica, any further payment to its depositors; but continued at its office in Syracuse to pay off to its depositors their deposits, as they called for the same, until enjoined and restrained by the court as hereinafter mentioned; that the corporation, being unable to pay its depositors on demand without sacrificing its securities, on or about the eleventh day of September, eighteen hundred and seventy-two, an action was duly commenced in the supreme court of the state of New York, &c.; (substantially as set forth and for the purposes stated by the petition against the respondent;) that on the twelfth

of September, eighteen hundred and seventy-two, the injunction order and order appointing Hiscock & Parker receivers were made by the said supreme court; that they gave bonds as such receivers, and immediately and on that day, took possession of all the property, assets and effects of the said corporation, and were still in possession thereof. In short, the answer admits the most material allegations of the petition in respect to this act of bankruptcy except the allegation that the proceedings, and the taking of the property of the corporation, were procured or suffered by the corporation, or instituted, carried on and done in collusion with the corporation or its officers, and the allegation that the said proceedings and taking of property were procured or suffered by the corporation with intent to defeat the operation of the bankrupt act.

The proceedings in the suit in the supreme court are not fully set out in the petition, or in the answer; and the substance of all the material admissions in regard to such proceedings has, it is believed, been already stated. There is nothing in the answer to show that the corporation assented to the proceedings, or had any power to resist the appointment of the receivers at the time of their appointment or to resist their taking possession of the property of the corporation. Indeed, so far as this court is judicially informed, the order for the injunction and the order appointing the receivers may have been made before the actual service of process upon the corporation, and without the knowledge of or any notice to any officer of the respondent; and the petition against the corporation in these bankruptcy proceedings was filed within four days after the granting of such orders, and, for aught that appears, before any motion could have been made in opposition to the continuance or confirmation of such proceedings. So far as any act or omission of the corporation formed the grounds of such proceedings, there is, it is believed, an entire absence of any admission or statement favorable to the petitioners, with the single exception of the alleged and admitted insolvency of the corporation, as shown by its inability to meet the legal demands of its depositors; and therefore upon the whole case as now presented, it is not deemed proper to make an order of adjudication until the acts of bankruptcy alleged, or one of them, shall be sustained by evidence taken upon the issues made by the petition and amended answer.

It was strongly insisted upon the argument that no adjudication against the respondent could be made in this court, because the proceedings in the state court were commenced before any act of bankruptcy had been committed. and, therefore, before any proceedings could have been taken in this court under the bankrupt act; that the state court had thereby first obtained jurisdiction, and that under such circumstances the taking of the respondent's property under the orders of that court

could not be an act of bankruptcy, nor could this court under proceedings in bankruptcy afterwards obtain jurisdiction of the person and property of the corporation and upon an adjudication in bankruptcy deprive the state court of its previously acquired and properly exercised jurisdiction, or take from the receivers or officers of the state court the property of the corporation and distribute it as provided for in the bankrupt act. In answer to this objection it was insisted that the insolvent laws of the states were superseded or suspended by the bankrupt act; that the proceedings in the state court were under an insolvent law of the state, and could not prevent or interfere with the proper execution of the bankrupt act.

It cannot be necessary to discuss, at length, the questions thus presented. The plenary and paramount power of congress to establish uniform laws on the subject of bankruptcies throughout the United States, is given in express terms by the constitution of the United States. It is therefore very clear that when congress has exercised the power thus conferred their action must necessarily control or limit the exercise of the power of the states over the same subject matter; and that whenever any state legislation, or any action of the state courts, comes practically into actual conflict with the proper execution of the laws of congress, constitutionally passed under such grant of power, state legislation and the jurisdiction and action of the state courts must yield to the paramount authority of the national government. This being so it is unnecessary in this case to decide that the insolvent laws of the states were superseded ipso facto by the bankrupt act. In respect to the particular act of bankruptcy relied on in this case, and the very able and elaborate argument of the respondent's counsel founded upon the allegation of state jurisdiction properly and previously acquired, it is not deemed necessary to do more than to refer to the clear and conclusive reasoning of the learned circuit judge who decided the Case of Bininger [Case No. 1,420]; but the cases referred to in Bump, Bankr. (5th Ed.) 520–522, show that the doctrines of that case have been generally, if not uniformly, recognized by the bankruptcy courts. In re Merchants' Ins. Co. [Case No. 9,441]; In re Independent Ins. Co. [Cases Nos. 7,017 and 7,018].

The motion for an adjudication upon, or notwithstanding, the respondent's answer is denied, and the objection to the exercise of jurisdiction by this court, founded upon the prior proceedings in the state court against the corporation and its property, and the consequent taking of possession of all the alleged bankrupt's estate under such proceedings, before the petition in this case was filed, and under which proceedings it is insisted that the state court has now the exclusive right to administer the estate of the alleged bankrupt, is overruled; and it is referred to C. Carskaddan, Esq., register in bankruptcy,

to take such testimony and proofs as may within the next two weeks be offered by either party, (on a proper notice of at least three days to the other,) upon the issues raised by such petitions and answer, with directions within five days after the expiration of such time or the closing of said proofs to report the same to this court. And this cause will be continued for the purpose of a hearing on said proofs and report to the eighth day of November next, at ten o'clock, a. m., at the United States court room in this city, if that shall be a court day, and if not until the next court day thereafter; and either party may then bring on said matter for argument upon such report and upon the question of adjudication or any other question then arising herein without further notice or order.